UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER BOWDEN,

     Plaintiff,

v.                             Case No.:   2:22-cv-671-SPC-KCD

DEREK SNIDER, MOSES FROST
and ANDREW BENNETT,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 48).

### Background

This is a civil-rights case.  Plaintiff Christopher Bowden—a prisoner of the Florida Department of Corrections—sues Warden Derek Snider, Captain Moses Frost, and Officer Andrew Bennett for spraying him with a chemical agent.  The Court recounts the factual background as pled in Bowden's Amended Complaint (Doc. 45), which it must take as true to decide whether the Complaint states a plausible claim.  *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

During an inspection of Bowden's dorm on June 21, 2022, Snider and Bowden had a conversation about some of Bowden's grievances, and it got

heated.  Snider told Frost to "get him cleared," which Bowden interpreted as an order to begin the chemical agent protocol.  About 30 minutes later, two officials—including a mental health professional—came to Bowden's cell and spoke with him.  45 minutes after that, Bowden was reading a book on his bunk, and several officers ordered him to submit to a cell search and a strip search.  Bowden complied.  As Bowden was putting his boxer shorts back on, Frost arrived and told Bowden to submit to another strip search.  Bowden asked why, and Frost ordered Bennett to spray Bowden with a chemical agent.

Officers searched Bowden again and escorted him to a shower to rinse off.  Bowden berated the officers and called Frost a racial slur, and Frost ordered Bennett to spray him again.  Bowden was taken to another shower but was not given enough time to completely rinse off the chemical agent from his body.  Frost ordered Bowden back to his cell, where the chemicals lingered. Frost further punished Bowden with seven days of property restriction and management meals.  Bowden was put on an increased security level due to the incident, and he continues to suffer from anxiety and depression.

Bowden claims Snider, Frost, and Bennett violated the Eighth Amendment by punishing him with a chemical agent without adequate justification.  Bowden also asserts a due-process claim because the defendants did not write a disciplinary report before using a chemical agent.  He seeks a

declaration that the defendants violated his constitutional rights, unspecified injunctive relief, and at least $100,000 in compensatory damages.

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Bowden files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred

under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

### 1. Exhaustion

Defendants first argue that Bowden only exhausted his administrative remedies regarding his due-process claim against Frost, so the Court should dismiss the rest of his claims. Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e. The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up). The PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…

> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

The Florida legislature delegated the establishment of administrative remedies for aggrieved inmates to the FDOC. *Chandler*, 379 F.3d at 1287. The FDOC created a three-step grievance process. To exhaust it, a prisoner must (1) file an informal grievance to the responsible staff member; (2) file a formal grievance with the warden's office; and (3) appeal the formal grievance to the Secretary of the FDOC. *Id.* at 1288.

The facts relating to exhaustion are not in dispute. Bowden timely submitted an informal grievance, formal grievance, and appeal about the June 21, 2022 incident. But Defendants argue parts of this action are unexhausted because Bowden's grievances do not identify Snider and Bennett, and because

they do not explicitly assert a violation of Bowden's Eighth Amendment rights. The Supreme Court has held "that exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). A prison system's rules determine what level of detail a grievance must include. *Id.* Defendants cite no FDOC grievance rule that required Bowden to identify every individual defendant and legal theory at any stage of the grievance process. Bowden's grievances gave prison authorities notice of the issues and an opportunity to resolve them. Bowden exhausted available administrative remedies.

### 2. Pleading Sufficiency

#### a. Excessive Force

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose

of causing harm." *Id.* The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up).

Bowden has alleged sufficient facts to allow an inference that Defendants sprayed him with a chemical agent merely to cause harm. Defendants argue both uses of force were justified—the first because Bowden disobeyed Frost's order to submit to a strip search, and the second because Bowden verbally berated him. But according to the complaint, Frost ordered Bowden to submit to a strip search before he had finished putting his clothes back on from a just-completed search. It is reasonable to infer that Frost's order was a pretense to justify the use of pepper spray, as directed by Snider about an hour earlier. And it is plausible that the second use of pepper spray was likewise unjustified. Although Bowden admits he verbally berated Frost, he also alleges he did not raise his voice or otherwise cause a disturbance. Bowden has pled facts sufficient to satisfy the subjective component of an excessive-force claim.

The Eleventh Circuit has recognised that "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Thomas v. Bryant*, 614 F.3d 1288, 1311 (11th Cir. 2010). Here, the factual allegations that satisfy the subjective component also satisfy

7

the objective component.   Bowden plausibly pleads he was sprayed with chemicals as a premeditated punishment and not for any penological reason. Bowden's excessive force claim survives 12(b)(6) review.

### b. State Law Tort Claims

Bowden also claims Bennett and Frosts actions constituted assault and battery under Florida law.   The defendants raise the defense of sovereign immunity under Fla. Stat. § 768.28.   A Florida government official "cannot be held liable for acts committed in 'the scope of his or her employment or function' unless he 'acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property.'" *Pena v. Marcus*, 715 F. App'x 981, 988 (11th Cir. 2017) (quoting Fla. Stat. § 768.28).   Bennett and Frost were clearly acting within the scope of their employment, so the question is whether their alleged conduct falls within the exceptions.

The "bad faith" and "malicious purpose" exceptions are collectively considered under an "actual malice" standard.   They "apply when the conduct was committed with ill will, hatred, spite, or an evil intent." *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1321 (11th Cir. 2022) (internal quotation marks omitted).   The Eleventh Circuit has explained the third exception— "wanton and willful disregard of human rights, safety, or property"—as follows:

> Wanton means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." Willful means "intentionally, knowingly and purposely." Together those terms describe "conduct much more reprehensible and unacceptable than mere intentional conduct."

*Id.* (internal citations omitted).

As explained in the preceding section, Bowden alleges Frost and Bennett twice sprayed him with a chemical agent without any reasonable justification. Accepting Bowden's allegations as true, Bennett's and Frost's conduct was willful and wanton, and the Court can reasonably infer that they acted in bad faith and with a malicious purpose. Thus, the Court does not find Frost and Bennett immune under Fla. Stat. § 768.28 at this stage of the case. They can raise the defense in a summary judgment motion if supported by evidence, but Bowden's state tort claims survive for now.

### c. Due Process

Bowden claims Defendants' failure to prepare a disciplinary report before spraying him with a chemical agent violated his right to procedural due process. The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (I) deprivation by state action of a protected interest

9

in life, liberty, or property, and (II) inadequate state process." *Reed v. Goertz,* 598 U.S. 230, 236 (2023).

A valid conviction constitutionally deprives a prisoner of his liberty and subjects him to the rules of the prison system. *Meachum v. Fano,* 427 U.S. 215, 224 (1976). But those rules can create liberty interests protected by the Due Process Clause. *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995). These liberty interests are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

Bowden claims FDOC rules required prison officials to give him notice of a rule infraction—in the form of a disciplinary report—before using a chemical agent. In the parlance of a procedural-due-process claim, Bowden asserts that FDOC rules created a liberty interest in being free from punishment by chemical agents. Bowden cites several sections of the Florida Administrative Code, but none support his claim. Fla. Admin. Code r. 33-602.210(5) is the FDOC rule for use of chemical agents, and it does not require officials to first prepare a disciplinary report. Nor does the rule on reporting disciplinary infractions, Fla. Admin. Code r. 33-601.303.

10

Bowden fails to plead identify a protected liberty interest here. FDOC rules did not require Defendants to complete a disciplinary report before using a chemical agent. Accordingly, Bowden has not stated a procedural-due-process claim.

### 3. Qualified Immunity

Defendants argue the doctrine of qualified immunity protects them from individual liability. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal

quotations omitted).  To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

There is no dispute that Defendants were acting within the scope of their discretionary authority when Bowden's claim arose, so the burden shifts to Bowden.  Bowden has carried that burden.  There is no shortage of relevant precedent.  Bowden cites Supreme Court cases like *Farmer v. Brennan,* 511 U.S. 825 (1994) and *Wilkins v. Gaddy,* 559 U.S. 34 (2010).  As these cases show, the Eighth Amendment's prohibition of excessive force in the prison context is clearly established.  And more specifically, the Eleventh Amendment has recognized that the non-spontaneous use of chemical agents on inmates can violate the Eighth Amendment when the inmate is not presenting a threat of immediate harm to himself or others.  *Thomas,* 614 F.3d 1288, 1306-17 (11th Cir. 2010).  Based on the allegations in Bowden's complaint and the reasonable inferences the Court can draw from them, Defendants are not entitled to qualified immunity.

### 4. Eleventh Amendment Immunity

Defendants raise Eleventh Amendment immunity to the extent Bowden sues them in their official capacities.  The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan,* 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Edelman,* 415 U.S. at 663.  "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* In other words, the bar protects state officials sued in their official capacities but not their individual capacities. *Melton v. Abston,* 841 F.3d 1207, 1234-35 (11th Cir. 2016).

Congress has not abrogated Florida's immunity and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence,* 916 F.2d 1521, 1525 (11th Cir. 1990).  Bowden cannot sue Defendants in their official capacities.

### 5. Respondeat Superior

Warden Snider argues Bowden fails to state a claim against him because supervisory officials cannot be held liable under § 1983.  It is well established in the Eleventh Circuit "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (internal quotation marks and citation omitted). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

Bowden is not attempting to hold Snider vicariously liable.  Bowden alleges Snider ordered Frost to begin the chemical agent protocol after a heated discussion with Bowden.  The allegations establish a clear causal connection between Snider's conduct and the use of force.

### 6. Available Remedies

Finally, Defendants ask the Court to "dismiss" Bowden's requests for injunctive relief, declaratory relief, compensatory damages, and punitive damages.  Rule 12(b)(6) "is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted." *Pace v. Platt*, 228 F. Supp. 2d 1332, 1334 (N.D. Fla. 2002).  A prayer for relief is not a "claim" within the meaning of Federal Rule of Civil Procedure 8(a) and thus is not subject to

14

dismissal under Rule 12(b)(6).  The availability of particular remedies is best left for a later stage of the case, after the parties have conducted discovery.

Accordingly, it is now

**ORDERED:**

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 48) is **GRANTED in part and DENIED in part**.  Bowden's due-process claim and official-capacity claims are **DISMISSED**.  Defendants must file an answer to the remaining claims in Bowden's Second Amended Complaint within **14 days** of this order.

**DONE** and **ORDERED** in Fort Myers, Florida on November 15, 2023.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record