UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER BOWDEN,

    Plaintiff,

v.                            Case No.:  2:22-cv-671-SPC-KCD

D. SNIDER, M. FROST and
ANDREW BENNETT,

    Defendants.
                                       /

## **OPINION AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment (Doc. 64) and responsive filings from the plaintiff and the defendants.

### **Background**

Plaintiff Christopher Bowden is a prisoner of the Florida Department of Corrections. On June 21, 2022, he was imprisoned at Charlotte Correctional Institution. Bowden sues Warden Derek Snider, Captain Moses Frost, and Officer Andrew Bennett over Bennett's use of pepper spray on June 21, 2022. The incident was documented by surveillance and hand-held cameras. The parties have also submitted declarations, incident reports, Bowden's inmate records, and the transcript of Bowden's deposition.

The incident started on the morning of June 21, 2022, but the parties dispute precisely when and how. According to Bowden, he had a discussion

with Snider about some grievances Bowden had filed about his housing assignment. Bowden says he threatened to sue Snider, who told Frost to "get him cleared," which Bowden understood as the first step in the prison's procedure for the use of chemical agents. (Doc. 64-9 at 12-18). Snider and Frost both deny this conversation occurred. (Doc. 64-5 at 2; Doc. 64-6 at 2). But Frost obtained the pepper spray cannister later used on Bowden from the Main Control Unit at 10:00 a.m., about an hour and a half before any defense witness claims Bowden caused a disturbance. (Doc. 64-6 at 2; Doc. 64-2 at 16).

Bowden testified that Lieutenant Kathleen Larson and a mental health professional came to his cell later that morning and asked what was going on. Bowden acknowledges he was mad and pacing his room but was composed enough to say what happened. He denies raising his voice or otherwise causing a disturbance. (Doc. 64-9 at 19-20). When they left, Bowden attempted to calm down by smoking a joint of a synthetic substance similar to marijuana and reading a book on his bed. (Doc. 20).

According to the defendants, the incident began when officers attempted to conduct a routine search of Bowden's cell around 11:30 a.m. Larsen states that Bowden was creating a disturbance by kicking the cell door, yelling, and refusing to submit to hand restraints. (Doc. 64-7 at 2). Larsen and Snider state that Snider authorized the use of chemical agents on Bowden at 11:55

a.m. if necessary to bring Bowden into compliance. (Doc. 64-5 at 2; Doc. 64-7 at 2)

At about 12:07 p.m., Larson approached Bowden's cell. This is when the video recording starts, and the Court has carefully reviewed the footage. Bowden indeed was quietly reading a book on his bed. Bowden agreed to submit to hand restraints, and a male officer conducted a visual strip search through the window on the cell door. While Bowden called the officers "stupid, said things like, "I hate you," and questioned orders, he complied. Just as Bowden was putting his boxers back on, Frost approached Bowden's cell and ordered him to strip again. Bowden appeared frustrated at the order and raised his voice, but he complied with the second strip search. When Frost told Bowden to lean forward, Bowden said something the Court cannot discern. Frost stopped giving instructions, said "alright," and stepped away from the cell door. The officers immediately began preparing to administer chemical agents. (Doc. 65-1).

At about 12:13 p.m., Bennett sprayed three one-second bursts of chemical agents into Bowden's cell. As the officers were unlocking the cell door and preparing to spray, Bowden repeatedly said, "I'm trying to comply." Bennett sprayed the agents into the cell while Bowden shielded himself with a blanket. It appears Bennett used a nozzle setting to deliver the chemicals into Bowden's cell as a fog. The officers closed the cell door again. Officers left

Bowden in his cell for a few minutes while he coughed and cleared his sinuses. At about 12:18 p.m., Larson again approached Bowden's cell and asked if he would comply with orders. Bowden said he tried and repeatedly asked if he could "cuff up." At about 12:23 p.m., Bowden submitted to a third strip search and hand restraints. (Doc. 65-1).

Bowden physically complied with orders outside the cell but was verbally confrontational with officers. As Bowden put it, "I was talking shit and I was pissed off." (Doc. 64-9 at 34). Frost ordered Bowden to stop talking, but Bowden continued to taunt officers after being locked in the shower. The officers made no move to turn the shower on, and Bennett sprayed Bowden with another three one-second bursts of chemical agents at about 12:27 p.m., this time using a spray setting to target Bowden directly. The defendants claim Larson told Bennett to spray Bowden, but the video shows that Frost gave the order. (Doc. 65-1).

At about 12:33 p.m., Bowden submitted to hand restraints and was escorted to another shower for a cold-water decontamination. After Larsen turned off the shower, Bowden told the officers he still had gas on him, but they did not allow him to continue decontaminating. The officers then escorted Bowden to a medical examination room for a post-use-of-force physical. (Doc. 65-2). No injuries were noted. (Doc. 64-2 at 27). Bowden told the nurse his

4

body was still burning from the chemicals, but he had no other injuries. (Doc. 64-9 at 46). After the physical, Bowden was returned to his cell. (Doc. 65-2).

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson Cnty. Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to

judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

## Discussion

Bowden asserts Eighth Amendment claims against the defendants based on theories of excessive force, failure to intervene, and deliberate indifference. He also asserts claims of assault and battery under Florida law. Before addressing Bowden's causes of action, the Court considers the parties' factual disputes.

The videos submitted by the defendants generally corroborate Bowden's version of the events and contradict the defendants. When Larson approached Bowden's cell to give the "final order" before resorting to chemical agents, Bowden was laying on his bunk reading a book. He offered to "cuff up" and complied with a strip search. Bowden just had time to put his boxers back on when Frost ordered him to submit to another strip search. Bowden questioned the order but complied. Bowden has argued throughout this case that Frost intentionally created a pretext to justify the use of chemical agents, and that is a reasonable interpretation of the facts depicted in the video.

The video also undercuts the defendants' attempt to insulate Frost from the decision to use chemical agents by claiming Larson gave Bennett the order to spray Bowden. The video suggests Frost made the decision in both

6

instances. While Larson can be heard instructing Bennett to apply three one-second bursts in the first instance, the officers were already preparing to spray at that point. And Frost clearly gave the order in the second instance. The Court finds the defendants' blatant misrepresentation of the facts concerning.

There is also a genuine dispute over Snider's participation in the use of force. Bowden testifies Snider told Frost to "get him cleared"—meaning, begin the process of using pepper spray on Bowden. While Snider and Frost deny that Snider gave that order, the video evidence does not make it implausible. Construing the video in Bowden's favor, a reasonable jury could find that Frost created a pretext for the use of chemical agents to fulfill Snider's alleged order. That finding would be supported by the fact that Frost retrieved the canister of chemical agents before any officer claims Bowden began causing a disturbance. Whether Snider gave the order for the use of force against Bowden is an issue for a jury to decide.

**A. Excessive Force**

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). A prisoner asserting an excessive force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the

7

subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). A claim satisfies the subjective element if the excessive force was "sadistically and maliciously applied for the very purpose of causing harm." *Id.* The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution." *Id.* (cleaned up).

The defendants are not entitled to summary judgment on this claim. While prison officials may use chemical agents to gain the compliance of recalcitrant inmates, the record here does not prove that Bowden was causing a disruption or refusing orders. *See Thomas v. Bryant*, 614 F.3d 1288, 1310 (11th Cir. 2010). Thus, a reasonable jury could find that each defendant participated in the use of force on Bowden solely to punish him and cause him harm. That is sufficient for the subjective component of an Eighth Amendment claim.

Bowden can also satisfy the objective component. The Eleventh Circuit has recognised that "where chemical agents are used unnecessarily, without penological justification, or for the very purpose of punishment or harm, that use satisfies the Eighth Amendment's objective harm requirement." *Id.* at 1311. And "being pepper sprayed sadistically and without penological

8

justification is not a routing discomfort of confinement." *Thompson v. Smith,* 805 F. App'x 893, 905 (11th Cir. 2020).

Bowden states he experienced physical pain from the chemical agents on his skin, which lingered because officers ended his decontamination shower before he was able to fully remove the chemicals. Bowden was not able to completely clean himself until his next shower two or three days later. He developed a rash, and his skin was peeling "really bad." (Doc. 64-9 at 52). Bowden also claims he suffered psychological injuries such that a psychiatrist increased the dosage of the mood stabilizers he was already prescribed. A reasonable jury could find these injuries sufficiently serious to violate the Constitution.

What is more, the defendants are not entitled to qualified immunity. Cases like *Thomas* and *Thompson* demonstrate that Bowden's right to be free from the unnecessary and unjustified use of chemical agents is clearly established. *See Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 5 (2021) (A right is clearly established for purposes of qualified immunity "when it is sufficiently clear that every reasonable officer would have understood that what he is doing violates that right." (quotation marks omitted)).

### B. Failure to Intervene

The Eleventh Circuit has recognized "that an officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. Cty.*

9

*of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). But such liability "only arises when the officer is in a position to intervene and fails to do so." *Id.* Snider argues he was not in a position to intervene because he was not present when the use of force occurred. In most cases, that would be fatal to a failure-to-intervene claim. But Snider did have a reasonable opportunity to prevent the use of force. According to Bowden's version of the events—which a reasonable jury could believe—Snider gave Frost the order to "get him cleared" earlier in the morning. It follows that Snider could reasonably anticipate that Bowden would be sprayed whether or not it was justified. Snider had an opportunity to intervene when Larson contacted him to request authorization to use chemical agents in accordance with FDOC policy. But Snider approved the use of pepper spray.

A reasonable jury could find Snider liable for failing to intervene.

**C. Assault and Battery**

The defendants argue Bowden's state tort claims are barred by Fla. Stat. § 768.28(9)(a), which protects state employees acting within the scope of their employment from personal liability unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." *See Pena v. Marcus*, 715 F. App'x 981, 988 (11th Cir. 2017). "Bad faith is defined as actual malice and willful and wanton conduct is worse than gross negligence and more reprehensible and

unacceptable than mere intentional conduct." *Id.* (quotation marks and citation omitted). "To determine whether an officer's actions are an assault and battery, courts inquire whether the officer's use of force was reasonable." *Id.*

The defendants argue they acted reasonably based on their account of the use of force and the events leading up to it. But as the Court discusses above, the video evidence contradicts much of the defendants' story. A reasonable jury could find that each defendant acted in bad faith or with willful disregard to Bowden's safety and constitutionally protected rights. The defendants have not established immunity from Bowden's state tort claims.

**D. Physical Injury**

The defendants next argue Bowden cannot recover compensatory damages because he did not suffer physical injuries that were more than de minimis. 42 U.S.C. § 1997e(e) bars prisoners from bringing civil actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" To satisfy the statute, "the physical injury must be more than de minimis, but need not be significant." *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007) (quoting *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999)).

The Eleventh Circuit has held that "temporary injuries arising from an unlawful pepper spraying" can be greater than de minimis. *Thompson*, 805 F.

11

App'x at 903. In *Thompson*, the court found the following alleged injuries sufficiently serious:

> Mr. Thompson says he was pepper sprayed and left with the chemical agents on his face for approximately twenty minutes; experienced coughing, difficulty breathing, and a prolonged burning sensation; was forced to take an extended shower to exacerbate the effects of the pepper spray; and was returned to a cell that remained contaminated with pepper-spray residue.

*Id.* at 904-05. Bowden's physical injuries were similar, and in some ways worse. Officers ended his cold-water decontamination early, and Bowden was not able to completely remove the chemicals from his skin until his next shower two or three days later. By that point, Bowden had a rash and peeling skin. Construing the evidence in Bowden's favor, the Court finds Bowden suffered more than de minimis physical injuries.

### E. Declaratory and Injunctive Relief

Finally, the defendants argue Bowden is not entitled to declaratory or injunctive relief because he was transferred to a different facility. That is true. The general rule in the Eleventh Circuit "is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007). Because Bowden is no longer incarcerated at Charlotte C.I., his request for these prospective remedies is moot. *See id.*

Accordingly, it is now

12

**ORDERED:**

Defendants' Motion for Summary Judgment (Doc. 64) is **GRANTED** as to Bowden's claims for declaratory and injunctive relief. The motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on December 23, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record